IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN SIMON, | : | |
|     Petitioner, | : | 1:13-cv-1765 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WAYNE GAVIN, *et al.*, | : | |
|     Respondents. | : | |

## **MEMORANDUM**

February 29, 2016

Petitioner John Simon ("Petitioner" or "Simon") a prisoner currently confined at the State Correctional Institution at Waymart, Pennsylvania, files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Judgment of Sentence of May 14, 2008, for convictions of robbery as a principal, and involuntary manslaughter and robbery as an accomplice, entered in the Court of Common Pleas of Wyoming County, Criminal No. CP-66-CR-0000150-2005.  The matter is presently proceeding via an Amended petition. (Doc. 24).[1]  For the reasons that follow, the amended petition for writ of habeas corpus will be denied.

---

[1] On February 4, 2014, Petitioner was directed to notify the court if it was his intent to have his "Amended Argument" (Doc. 24) stand as his Amended Petition and whether his Amended Petition is to be his exclusive petition.  (Doc. 26).  He was advised that his failure to inform the Court would result in the Amended Argument standing as his new, exclusive petition.  (*Id.*)  Petitioner failed to comply with the Order.  Consequently, on March 18, 2014, the Clerk of Court was directed to docket the Amended Argument as the Amended Petition in this action.  (Doc. 27).

I.  **Factual and Procedural Background**

The trial court summarized the relevant facts as follows:

John Simon and his paramour, Cheryl Lawson, were accused of being the two principal participants in the robbery-murder of Devin King, also known as "Slick."  King was a dealer of "crack" cocaine who moved into the Simon-Lawson residence for a few days in December 2003.  From there he plied his trade, selling mostly to Simon, Lawson, and Lawson's daughters.  At this point, the stories of the witnesses begin to diverge with respect to whether Lawson or Simon was the principal actor in what ensued.  It is clear, however, that a plan was formulated to rob King and take his money and drugs.  Lawson picked up a loaded shotgun and handed it to Simon.  Simon pointed the shotgun at King, who grabbed the weapon, and a struggle followed.  At some point, the shotgun came free and was picked up by Lawson who then shot King in the buttocks.

… King's money and drugs were removed from his person.  His hands were bound and he was removed to Simon's basement where he was placed in a prone position on a bench….

Simon made several trips to the basement in an effort to silence King.  To this end, he used a tire iron, striking King several times in the upper torso, and eventually on the top of his skull.  This caused a large depressed fracture of the skull, killing Mr. King.  Simon and Lawson then arranged to have two other individuals come to the house, where the body was wrapped in plastic, removed, and then buried in a secluded location.  The badly decomposed body of Devin King, minus his two hands, was recovered one year later….

 When Simon and Lawson were arrested, they both gave incriminating statements to the State Police.  [Lawson entered a guilty plea to third – degree murder and is presently serving a prison sentence.]  Lawson testified on behalf of the Commonwealth at Simon's trial.  Simon testified as well, admitting for the most part the conduct described above, while minimizing his culpability due to his drug use that night….

(Doc. 21, pp. 88-89, citing "Trial Court Op., 11/17/6 at 2-4 (footnote omitted)).

### A. Trial

Simon was convicted by a jury of robbery as a principal and robbery and criminal homicide as an accomplice. (*Id.* at p. 55). On October 16, 2006, the trial court granted Simon's motion for judgment of acquittal finding that the accomplice-liability convictions were invalid and deferred sentencing on the remaining robbery charge. (*Id.*) The Commonwealth appealed to the Superior Court of Pennsylvania. (*Id.*) The Superior Court reversed and remanded based on the following:

> As to the Commonwealth's first issue, we find that the trial court plainly erred in reversing Simon's convictions for robbery and homicide as an accomplice. The record reveals that the district attorney opted to charge Simon with those offenses as principal and as an accomplice, which was clearly appropriate under the circumstances, and the jury found that Simon was an accomplice to both crimes. The fact that Simon was acquitted of murder and manslaughter as a principal is irrelevant; those acquittals did not preclude a finding that Simon was legally accountable for the actions of Cheryl Lawson, who blasted the victim with a shotgun during a robbery.
> 
> In order to sustain a conviction under an accomplice theory, two elements must be satisfied: (1) there must be evidence that the defendant intended to aid or promote the commission of the underlying offense; and (2) there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. *Commonwealth v. Brewer*, 876 A.2d 1029 (Pa. Super. 2005).
> 
> In the case at bar, Cheryl Lawson testified that she shot Devin King in the back with a shotgun after Simon ordered King to hand over his supply of crack cocaine. *See* N.T. Trial, 9/11/06, at 119-20. Lawson pled guilty to third degree murder for her role in killing and is serving

a fifteen-to-forty-year prison sentence. *Id.* at 115. Simon essentially verified Lawson's account of the incident and acknowledged that he initially brandished the shotgun, removed cash from King's pockets, and struck King in the head with a lug wrench after he had been bound with duct tape. *See* N.T. Trial, 9/11/06, at 528, 543. In addition, Dr. Gary Rose, the forensic pathologist who performed the autopsy on King, testified that the manner of death was homicide and opined that the victim died as a result of the "combined effects of a shotgun wound to the pelvis and blunt cerebral trauma." N.T. Trial. 9/11/06, at 227. Thus, based on the record, we find that there was ample evidence to support Simon's convictions under an accomplice theory.

… [T]he accomplice charge provided for liability if the jury found that Simon promoted, and actively engaged in any conduct prohibited under 18 PA.C.S. § 2507, *i.e.*, murder, voluntary manslaughter, or involuntary manslaughter. Thus, Simon's acquittal of second degree murder did not preclude a conviction for acting as an accomplice to criminal homicide. As Simon admittedly participated in the unlawful killing of Devin King, the homicide conviction must stand.

…

The Commonwealth's final argument is that Simon's homicide conviction should be graded as second degree murder since the jury also convicted him of robbery. Simon counters that the offense should be graded as the lowest degree of homicide because the jury did not render a specific finding on this issue. As Simon's position is supported by case law, we conclude that this crime must be graded as involuntary manslaughter.

…

In the instant case, as in [*Commonwealth v.*] *Riley*, [811 A.2d 610 (Pa.Super. 2002), the jury rendered a general verdict that did not specify whether Simon had been convicted as an accomplice to murder or manslaughter because the verdict slip did not provide for a specific finding; it merely stated: "Liability for Conduct of Another-Accomplice to Criminal Homicide." Verdict, 9/13/06, at 1. Therefore we cannot discern the basis of the jury's determination. Indeed, as noted *supra*, the trial court instructed the jury that: (1) criminal

> homicide encompasses both murder and manslaughter; (2) it could find Simon guilty of any degree of homicide ranging from first degree murder to involuntary manslaughter; and (3) voluntary intoxication can reduce a charge of first degree murder to third degree murder. Furthermore, the jury was aware that Simon's confederate, Cheryl Lawson, was convicted of third degree murder for her actions in this case. Hence, contrary to the Commonwealth's position, we cannot presume that the jury intended to convict Simon of second degree murder. The verdict was inherently ambiguous, and the ambiguity must be resolved in Simon's favor. *Riley*, *supra*.
>
> Order reversed. Case remanded for reinstatement of the convictions in question. The homicide conviction shall be graded as involuntary manslaughter for sentencing purposes. Jurisdiction relinquished.

(Doc. 21, pp. 60-63, 64-65).

**B. Direct Appeal**

On May 14, 2008, Simon was sentenced to the statutory maximum term of incarceration for the robbery conviction, 120 to 240 months, and a consecutive term of imprisonment of twenty-four to sixty months for the involuntary manslaughter conviction. (*Id.* at 176). He filed a direct appeal claiming that "the trial court erred in allowing the prosecutor to ask him on cross examination if a Commonwealth witness had lied." (*Id.*) In affirming the judgment of sentence, the Superior Court concluded that Simon failed to demonstrate that he was prejudiced by the prosecutor's examination and that there was no trial court error or abuse of discretion. (*Id.* citing *Commonwealth v. Simon*, 972 A.2d 562 [1007 MDA 2008] (Pa. Super. 2009) (unpublished opinion)).

### C. PCRA Proceedings

On March 20, 2010, Simon filed a PCRA petition, raising the following three claims: (1) Ineffective assistance of trial counsel for failing to object at sentencing to the imposition of a sentence outside the guideline range; (2) Ineffective assistance of trial counsel for failing to file a post-sentence motion asserting that his sentence was unlawful in that it was outside the guideline range; and (3) The conviction should be vacated because accomplice to criminal homicide is not a crime. (Doc. 21, pp. 163-171). A hearing was held on September 28, 2011. (*Id.*) The petition was denied on February 1, 2012. (*Id.* at 163-171, 176-77). On appeal to the Superior Court, Simon argued that the trial court improperly departed from the Sentencing Guidelines and trial counsel was ineffective for failing to file a post-sentence motion. On April 30, 2013, the Superior Court concluded that "the PCRA court did not err in denying Simon's claims" and affirmed the order denying post-conviction relief. (*Id.* at 186).

## II.     Issues Presented in Federal Petition

The instant petition for federal habeas relief was filed on June 27, 2013. (Doc. 1). The matter is presently proceeding on Simon's Amended Petition, filed on January 29, 2014. (Docs. 24, 27). Therein, he raises the following issues:

1. "There is no crime of 'accomplicity'" in that, in accordance with the Pennsylvania "Crimes Code" "[a]n accomplice may be guilty of the crime committed, but can't be guilty of being an accomplice."

2. "There is no authority for the Commonwealth's contentions" with regard to charging an individual with the crime of accomplice and convicting an individual as an accomplice.

3. "The standard jury charge properly defines accomplice liability as a theory of liability for a specific crime."

4. "Where the jury does not find a specified grading of an offense, judgment of sentence may be entered only at the lowest grade."

(Doc. 24, pp. 3-3).

### III. Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). For instance, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims asserting errors of state law, a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review, even if they are couched in terms of due process. *Estelle v. McGuire*, 502 U.S. 62, 67-8, (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 211 (1982); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir.1997) (stating that "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim"). For example, a state court's sentencing decision and claims arising out of that decision are generally not constitutionally cognizable, unless the sentencing decision exceeds the statutory limits or is wholly unauthorized by law. *See Bozza v. United States*, 330 U.S. 160, 166 (1947).

Respondents argue that the Amended Petition should be denied because Petitioner "does not state a ground on which he claims that he is in custody in violation of 'the Constitution or laws or treaties of the United States." (Doc. 33, p. 12). The Court agrees. In his first ground, Petitioner challenges the Pennsylvania Crimes Code and the accomplice liability statute. (Doc. 24, p. 2). In ground two, he challenges the Commonwealth's reliance on accomplice liability caselaw during the appeal process. (*Id.*) In the third ground, he takes issue with the use of the Pennsylvania Bar Institute's Standard Criminal Jury Instruction for accomplice liability. Clearly Petitioner is challenging the state court's interpretation of Pennsylvania's accomplice liability law. The state court proceedings and his federal petition are devoid of any references to federal constitutional law. Thus, the petition will be denied with respect to grounds one, two and three because they are not cognizable on federal habeas review.

In his fourth and final claim, Petitioner challenges the Commonwealth's position that the " ' accomplicity' to criminal homicide conviction should result in a sentence for second degree murder, since the jury convicted of the robbery." (Doc. 24, p. 3). In support of this position, he states that "[a]ccepting this argument would erase the Constitutional protections of the right to a jury trial. Mr. Simons holds that the offense would have to be of the lowest grade." (*Id.*) On appeal from the order granting Simon's motion for judgment of acquittal, the

Commonwealth argued that the homicide conviction should be graded as second degree murder since the jury also convicted him of robbery. (Doc. 21, p. 62). Simon countered that the offense should be graded as the lowest degree of homicide because the jury did not render a specific finding on this issue. (*Id.* at 62-63). The Superior Court stated "[a]s Simon's position is supported by case law, we conclude that this crime must be graded as involuntary manslaughter." (*Id.* at 63). The court further states, "contrary to the Commonwealth's position, we cannot presume that the jury intended to convict Simon of second degree murder. The verdict was inherently ambiguous, and the ambiguity must be resolved in Simon's favor." (*Id.* at 64-65) (citation omitted). The matter was remanded to the trial court with the directive that "[t]he homicide conviction shall be graded as involuntary manslaughter for sentencing purposes." (*Id.* at 65); s*ee Commonwealth v. Simon*, 935 A.2d 22 (Pa. Super. 2007) (unpublished memorandum). On May 14, 2008, Simon was sentenced "to a term of 120 to 240 months' imprisonment for the robbery conviction, and a consecutive term of 24 to 60 months' incarceration for the involuntary manslaughter crime." (Doc. 21, p. 175). Because Simon was sentenced based on the lowest grade offense, he has received the only remedy available. *See Jones v. Carroll*, 388 F. Supp. 2d 413, 421 (D. Del. 2005). Consequently, his petition will be denied with respect to the fourth ground.

**IV.** **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

**V.** **Conclusion**

Based on the foregoing, the Court will deny Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a certificate of appealability will not issue.

An appropriate Order follows.